UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THOMAS L. DOHNER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:18-CV-251-HAB ) |
| ANDREW SAUL, Commissioner of the Social Security Administration[1], | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Thomas L. Dohner's Brief (ECF No. 19), filed on January 31, 2019. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), filed his Memorandum in Support of Commissioner's Decision (ECF No. 22) on April 11, 2019. Dohner filed his Reply Brief (ECF No. 23) on April 25, 2019. This matter is now ripe for review.

**A.    Procedural History**

Dohner filed for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on November 6, 2014. His application was denied initially and on reconsideration. On May 17, 2017, Dohner had a hearing on his application before an administrative law judge ("ALJ"). The ALJ issued his decision (R. 29–37) on September 14, 2017, finding that Dohner was not disabled (the "Decision").

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Dohner challenged the ALJ's decision by filing a request for review with the Appeals Counsel, but that request was denied on June 6, 2018. Dohner then filed his Complaint (ECF No. 1) on August 8, 2018.

**B.     Legal Analysis**

**1.     *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon*

*v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2.    *The ALJ's Decision***

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant

3

work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Dohner had not engaged in substantial gainful activity since March 16, 2015. At step two, the ALJ found that Dohner had the following severe impairments: hypertension, degenerative disc disease of the lumbar spine, and shoulder arthropathy. The ALJ also determined that Dohner's seizure disorder was a non-severe impairment.

At step three, the ALJ found that Dohner did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 32). At step four, the ALJ determined that Dohner had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand and/or walk for two hours out of an eight hour workday with the option to alternate positions every thirty minutes; sit for six hours out of an eight hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can do no overhead reaching, and must avoid concentrated exposure to dangerous machinery and unprotected heights.

(*Id*.). At step five, the ALJ determined that Dohner was unable to perform any past relevant work, but that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**3.** *The 2016 MRI*

After his evaluation by the state agency physician, Dohner underwent an MRI on September 6, 2016. This MRI found some progression in Dohner's spinal condition, most notably a "[n]ew disc protrusion at L4-5." (R. 523). Dohner bases his first allegation of error on the ALJ's handling of that MRI, claiming that the ALJ "should have re-submitted Plaintiff's case to medical

4

expert scrutiny in light of potentially determinative evidence which surfaced after the state agency consultants had reviewed Plaintiff's case and found her [sic] capable of performing light work on a regular basis without interruption." (ECF No. 19 at 14). Based upon the Seventh Circuit's holding in *Goins v. Colvin*, 764 F.3d 677 (7th Cir. 2014), Dohner's argues that the ALJ's review of the MRI requires remand. This Court must agree.

The contested part of the Decision is found in the record at page 35. There the ALJ states, in explaining why he gave "great weight" to the opinion of the state agency physician that Dohner could perform less than light work with occasional postural limitations in formulating the RFC, "[Dr. Brill's] opinion is consistent with the findings of Dr. Losiniecki." (R. 35). Dr. Losiniecki was Dohner's treating neurosurgeon.

The Seventh Circuit's decision in *McHenry v. Berryhill*, 911 F.3d 866 (7th Cir. 2018), appears to be directly on point. In that case, the ALJ rejected MRI findings of multiple impinged nerves and spinal cord compression, determining that the MRI was inconsistent with the medical records from the same time period. *Id.* at 870–71. The claimant argued on appeal that this was error and that the ALJ should have subjected the MRI to medical scrutiny. *Id.* at 871.

The Seventh Circuit agreed with the claimant, holding:

> We have said repeatedly that an ALJ may not "play[ ] doctor" and interpret "new and potentially decisive medical evidence" without medical scrutiny. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ruling that the ALJ erred in failing to submit claimant's first MRI in 11 years to medical scrutiny and in interpreting results herself). An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are "consistent" with the ALJ's conclusions about her impairments. *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018).
>
> In this case, the ALJ alone compared the test results with earlier treatment records to determine if McHenry's back impairment in April 2014 existed at the same level of severity during the relevant period. As in *Akin*, where we reasoned that the ALJ was not qualified to determine on his own whether the MRI results would corroborate the claimant's complaints "without the benefit of an expert opinion,"

5

> 887 F.3d at 318, here, the ALJ was not qualified to assess on his own how the April 2014 MRI results related to other evidence in the record.

*Id*.

*Akin* is similarly instructive. There, the ALJ found that an MRI scan that had not been reviewed by the state agency physicians was "consistent with Akin's impairments" but did not support her allegations of disabling pain. *Akin*, 887 F.3d at 316. The claimant appealed, arguing that the ALJ erred by interpreting the MRI results and by crediting the opinions of state agency physicians who had not reviewed the MRI results.

Again, the Seventh Circuit agreed.

> The ALJ stated that the MRI results were "consistent" with Akin's impairments and then based his assessment of her residual functional capacity "after considering ... the recent MRIs." But, without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were "consistent" with his assessment. The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion. The ALJ had many options to avoid this error; for example, he could have sought an updated medical opinion. But because the ALJ impermissibly interpreted the MRI results himself, we vacate the judgment and remand this case to the agency.

*Id*. at 317–18 (citations omitted).

The ALJ in this case made the same fundamental error as the ALJs in *McHenry* and *Akin*. The record in this case contains no evaluation of the 2016 MRI in the context of what, if any, functional limitations the findings would support. Instead, the ALJ had only the MRI report itself, and Dr. Losiniecki's summary of that report. (R. 523–34; 526). Dr. Losiniecki's report provides no insight into how the impairments noted in the MRI findings could be expected to affect Dohner's functional capabilities. It certainly does not opine that the MRI findings are consistent with the functional limitations found by the state agency physician.

The Commissioner argues that there is substantial evidence supporting the RFC, and that "Plaintiff has not explained how [the state agency physician's] opinion was invalidated by a later MRI scan that did not mention any functional limitations whatsoever." (ECF No. 22 at 5). This argument misses the point. It is the fact that the MRI scan did not mention functional limitations that makes the ALJ's ruling problematic. The lack of any direction from a medical expert means that the ALJ's finding of consistency between the state agency physician's RFC determination and the MRI results is necessarily the ALJ's opinion alone. This is precisely the kind of "playing doctor" that the Seventh Circuit has repeatedly warned against.

Simply put, this Court cannot conclude that the Decision is supported by substantial evidence when evidence as key as the 2016 MRI has not been subjected to any medical opinion on functional limitations. The MRI may very well be consistent with the state agency physician's findings, but that determination must be made by a medical expert, not the ALJ or this Court. Accordingly, this matter must be remanded for further proceedings.

**C.  Conclusion**

Given the Court's conclusion that the ALJ erred in formulating the RFC in light of the 2016 MRI, it is unnecessary for the Court to consider Dohner's remaining arguments. For the foregoing reasons, the Court DIRECTS the Clerk to enter judgment in favor of Plaintiff and against Defendant, and REMANDS this matter to the Commissioner for further proceedings.

SO ORDERED on December 18, 2019.

                                             s/ Holly A. Brady
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT